### TOLEDO (CITY) v. LENA FULLER.

1. EXISTENCE OF CERTAIN STREET SUFFICIENTLY PROVED, WHEN.

The fact that there was a street called "Sycamore street" as alleged in plaintiff's petition in a personal injury case against a municipality, is sufficiently established for the purpose of the case wherein such question is raised where its existence was assumed by counsel for the plaintiff and the municipality in the examination of witnesses, and some of the witnesses testified that they lived on, or had been on, and used the sidewalks of, a street commonly called by such name, and there is no evidence to the contrary.

2. PERSON NOT BOUND TO LEAVE A DEFECTIVE SIDEWALK, ETC.

A person is not bound to leave the sidewalk and go into the roadway of a street because he knows the sidewalk is out of repair, and his act in keeping on the sidewalk is not sufficient to charge him with contributory negligence where the evidence shows that, while upon the sidewalk, he was conducting himself as an ordinary prudent person would under the same or similar circumstances.

3. ONE WALKING ON DEFECTIVE SIDEWALK MUST EXERCISE CARE COMMENSURATE WITH DANGER.

One knowing a sidewalk to be out of repair may nevertheless walk upon it, but he must use care commensurate with the danger of the situation, i. e., ordinary care under the circumstances.

4. PLAINTIFF'S EVIDENCE NOT SUFFICIENT TO SHOW NEGLIGENCE, WHEN.

Where plaintiff, who was an uneducated woman and in the ordinary walk of life, in response to a question asked her upon cross-examination as to whether she exercised the same care while walking upon the defective sidewalk as she did when walking upon another street which was in good repair, answered that she did, her response will not be considered as sufficient to show that she was guilty of negligence with respect to walking on the defective sidewalk.

5. VERDICT FOR $1,000 NOT EXCESSIVE, WHEN.

A verdict for $1,000 in favor of a woman who was injured by falling on a defective sidewalk is not excessive where it appears that the bone at the elbow was fractured; that her arm had to be kept in a plaster cast for several weeks, that she is unable to straighten her arm which has to be kept at an angle; that she is unable to open and close her hand, and that by reason of such injuries she not only suffered great pain, but has also become a dependent upon county charity.

ERROR to Lucas common pleas court.

U. G. Denman, city solicitor, and C. K. Friedman, assistant city solicitor, for plaintiff in error.

L. H. Wilkinson and G. W. Kinney, for defendant in error.

Lucas County.

**HULL, J.**

This action was brought in the court below by Lena Fuller to recover damages for a personal injury which she claims to have sustained on account of the negligence of the city in regard to a certain sidewalk, which she says was on "Sycamore street." Her claim is, that the boards of the sidewalk were loose; that while walking over it, towards evening, but while it was still daylight, with another who stepped upon and tipped up a loose board, she was tripped and fell injuring her arm and other parts of her body. On the trial below she was awarded a verdict of $1,000. Judgment was entered upon this verdict, and it is to reverse that judgment that proceedings in error have been begun in this court.

It is claimed by the city, first, that there was no such street at the place where she alleges she was injured; that the evidence does not show that there is any such street as "Sycamore street," as it was called by the plaintiff, and that question may be considered first; for, if there is no such street and no liability on the part of the city to keep it in repair, that, of course, is the end of the case. There were no witnesses called on the part of the plaintiff to testify that the place where she fell was a part of the street or that it ever had been dedicated as a street or established as such by the city. It was alleged in her petition that she fell on "Sycamore street." That was denied, along with the other allegations of the petition, by a general denial—there is no specific denial in the answer of the allegation in regard to the street. The case was tried as though there was no question about this being a street and so tried by both plaintiff's and defendant's counsel.

Witnesses were asked about the street—witnesses for the plaintiff —and were cross-examined by counsel for the city as though it was an admitted fact. Almost the first question asked of Mrs. Fuller, the first witness, when she went upon the witness stand, was: "Where do you live?" And her answer was: "On Sycamore street." And when it came to the cross-examination she was asked by counsel for the city: "Now, Mrs. Fuller, you were living down on Sycamore street, weren't you?" And her answer was, "Yes, sir." And many questions of the same character were asked of witnesses, by both sides, assuming that the place where she fell was in a street and that street was Sycamore street. Witnesses for the plaintiff were asked these questions, and when cross-examined by counsel for the city the same assumption is made in regard to this street.

Again, on cross examination of Mrs. Fuller, she was asked: "In going back to your house it was necessary for you to go up to Sycamore street from Summit?" and she answered that it was. And on page seven of the bill of exceptions: "And before you lived there, you used

Toledo v. Fuller.

to be on Sycamore street, quite a bit, didn't you?" To which she answers: "Not very much." And the same method is followed in the examination of defendant's witnesses when they were called. A witness named Daniel Reams was called by the city, and the first question put to him is: "You live on Sycamore street?" And he answers that he does. He is asked if he has lived there some years, and he answers that he has. The witness, George Bolan, called by the city, was asked: "Mr. Bolan, where do you live?" and his answer was: "222 Sycamore street." "Are you on Sycamore street between Summit and Water streets?" "Yes, sir." And so it reads through the record.

No question was made at any time during the trial as to this being one of the streets of the city. The court charged the jury as though there was no question about it and no special exception was taken to it; we think a *prima facie* case was made here, beyond question, that this was a street known as "Sycamore street." The witnesses testify, among other things, as to where it went—that it ran down to the Toledo furnaces and in the direction of the Vulcan Iron Works, and as to the number of people who travel on it down to the street below.

There was no denial of this, no effort on the part of the city to show that this was not a street, and, in the absence of any such evidence, it is clear to us that this does tend to establish the claim that this was a public street. It is not necessary to show that it had ever been dedicated or located as such by the city, but if used as a street for a long period of time, as this had been, apparently, and houses were built upon it, with numbers upon them, and having sidewalks upon it and people had been calling it a street, it is sufficient to establish the claim of the plaintiff that it was a public street, in the absence of evidence to the contrary; so that question may be passed without further discussion.

It is claimed and insisted upon by the city that the plaintiff was guilty of contributory negligence which caused or contributed directly to her injury, and that therefore, she cannot recover—her negligence consisting in her walking upon this walk without proper care. This walk had been laid along Sycamore street, apparently, a good many years ago, was a little out of repair, and for a portion of the way along the side of the street there was nothing but a cinder path. She came down from Summit street at the time in question and when she reached this strip of sidewalk, a man named Garrigan came up and offered to carry her basket of provisions, and she permitted him to do so; and they walked along the street together until he stepped upon a loose board, which flew up and tripped her down. This walk was in bad repair. The stringers were rotten; the nails were loose; the boards perhaps loose.

As they lay upon the stringers, it would be impossible to tell from their appearance whether they were loose or not.  Some few of them were out, but not very many.  The evidence does not disclose what the condition of the street was along there,—the roadway at the side of the walk, —whether it was passable for walking upon, but we understand the law to be, that one is not required to leave the sidewalk and walk in the road because the sidewalk is out of repair.

It is the duty of the city to keep the sidewalks in reasonable repair and citizens traveling upon the streets have a right to walk upon them and that is not contributory negligence; it does not constitute contributory negligence, alone, for one to walk upon a sidewalk that is out of repair; for, if that was the law—if all the sidewalks in the city were in such bad condition as to make them dangerous—it would afford practically complete protection to the city, if it were true that one who walked on such a sidewalk could be found guilty of contributory negligence.

But we think the court charged the jury correctly upon that proposition: that one knowing the sidewalk to be somewhat out of repair, may walk upon it, but he must use care commensurate with the danger of walking upon the walk; he must, under the circumstances use what would be ordinary care.  If some of the boards are out, and he knows it, he must look out for them, or if some of the boards are loose, and he knows it, he must use care according to his situation.  The evidence does not show that Mrs. Fuller was walking in a careless manner upon this walk.  She testifies that she was walking along and looking out; that she did not know that these boards were loose at this particular point.  Apparently, she was walking along as well as she could, upon this day.  She was asked, upon cross-examination, if she was exercising the same care that she had exercised when she was walking upon Summit street, and she says she did, and it is urged that this shows that she was guilty of negligence, as it is said she ought to have exercised greater care in walking upon this sidewalk which was so much out of repair.

That, however, was simply a remark of hers in answer to a question put by counsel.  She was an uneducated woman, in the ordinary walk of life, making her living as a cook and living down on this street with this dilapidated walk, and probably did not comprehend the full import of the question, put as it was, and answered it as she did without consideration and we do not think that should be taken as proving absolutely that she was guilty of contributory negligence—that fact is to be determined by the evidence and by the manner in which she was in fact walking upon this sidewalk according to the testimony.

Toledo v. Fuller.

She was not required to walk in the road, where the Supreme Court has held that pedestrians ought not to walk; she was not required as a matter of law, to get off the sidewalk. She was apparently doing the best she could. She says she did not know that these boards were loose, and she probably would not have been thrown down if it had not been for the man walking with her stepping upon the board and tipping it up, which is quite a common way of being tripped up and thrown down. We are unable to find, upon reviewing the case, that she should be held to have been guilty of such negligence as would preclude a recovery for her injuries. We do not cite any authorities upon this question. The law of contributory negligence is well established in these cases and they are governed by well-known principles of law. If she was conducting herself as an ordinarily prudent person would under the same or similar circumstances, that was sufficient, and we cannot say that she was not.

It is said that the damages awarded by the jury are excessive, and evidently appear to have been given under the influence of prejudice or passion. Quite a large number of physicians were called to testify in the trial. Soon after she was hurt she was taken to the hospital, and she claims that her shoulder was injured and also the bone at her elbow. The evidence shows that she fell very violently and that the bone in her elbow, known as the olecranon process, as one doctor says, at the angle of the elbow, was fractured. She also claims that her hand was injured. Since her injury and at the trial, she was unable to open and close her hand—the fingers were stiffened. Her arm is injured, the elbow being stiffened so that she is unable to straighten the arm, which has to be kept at an angle. It is urged by the city that the evidence shows that she had injured her wrist when she was a child. She denied that she had done so or that her arm had ever been injured before; and it is urged that the stiffening of the fingers and of the hand could not have been produced by the injury at her elbow.

The evidence showed that she had sustained a very severe injury. This bone at the elbow was fractured; all, practically, agree upon that. Her arm had to be put in a plaster cast and kept there for several weeks. Since that time she has practically lost the use of her arm and hand, for the reasons that I have given. It is said that if she had moved her fingers and hand while the arm was in the cast, that they would not have become stiffened by anchylosis, as it is called, which, the doctors say, comes largely from nonuse of the hands in case of a fracture or injury. The doctor who treated her testifies that he instructed her to move her fingers and hand. She differed with him somewhat. But we

Lucas County.

think she may not have done all that she might have done to move her hand, and the doctor at the hospital may not have instructed her as fully as he should.

However, she is now in this condition as the result of this injury. The use of her arm is practically lost. She is now at the poorhouse; was at the time the case was being tried and has been there for some time. She had been earning small wages, $2 to $2.50 per week, at cooking. She earned enough to support herself and enable her to rent her humble rooms on this street and to get her food. It looks as though she would never again be able to provide for herself in this way—as though she is practically deprived of ability to perform manual labor in the manner in which she had been accustomed to. She has suffered a great deal of pain on account of this injury. This question of damages has been argued very fully by counsel for the city, and therefore I have discussed it somewhat; but, after looking through the testimony, we are unable to say that the jury were influenced by prejudice or passion or that this verdict for $1,000 is excessive. It does not seem to us that it is more than she is entitled to for the injury which she has sustained. She has lost her independence which she had before in life; she has become a dependent. To be sure she is in the poorhouse at the expense of the public, but that does not deprive her of her right to recover for damages which she has sustained. We cannot find, therefore, that the amount allowed by the jury and the amount of the judgment is excessive, under the testimony.

No objection is made to the charge and no other objections are made than those I have mentioned. We find no error in the record of the case; the judgment, therefore, will be affirmed.

**Haynes** and **Parker, JJ.,** concur.